# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Samuel N. Edeh,                                         Case No. 11-CV-2671 (SRN/JSM)

        Plaintiff,                                MEMORANDUM AND ORDER

v.

Equifax Information Services, LLC,
and Capital One Bank (USA), N.A.,

        Defendants.

_____

Samuel N. Edeh, 619 East Center Street, Apt. 1, Rochester, MN 55904, pro se.

J. Anthony Love and Brian J. Olson, King & Spalding LLP, 1180 Peachtree Street, Atlanta, GA 30309; Andrew T. Shern and Christopher G. Angell, Murnane Brandt, PA, 30 East 7th Street, Suite 3200, Minneapolis, MN 55101, for Defendant Equifax.

Aaron D. Van Oort and Trista M. Roy, Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, for Defendant Capital One Bank.
_____

SUSAN RICHARD NELSON, United States District Court Judge

       This matter is before the Court on the Report and Recommendation ("R&R") of

Magistrate Judge Janie S. Mayeron dated July 27, 2012 [Doc. No. 75]. In the R&R,

Magistrate Judge Mayeron recommended that the Court deny Plaintiff's Motion for

Partial Summary Judgment as to Liability against Defendants [Doc. No. 19], grant in part

and deny in part Defendant Capital One Bank's Motion for Summary Judgment [Doc.

32], and grant Defendant Equifax's Motion for Summary Judgment [Doc. No. 43]. She

further recommended that Defendants' Motions to Stay Discovery [Doc. Nos. 58, 62] be

denied as moot.

After the parties filed objections and responses to objections to the R&R, Capital One and Edeh agreed to resolve Edeh's claims against Capital One, and filed a stipulation of dismissal with prejudice as to Capital One. [Doc. No. 89.] Thus, the only remaining issue is whether the R&R properly recommended granting Equifax's Motion for Summary Judgment.

According to statute, the Court must conduct a de novo review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, the Court adopts the R&R in part and declines to adopt it in part, denies Plaintiff's Motion for Summary Judgment, and grants in part and denies in part Equifax's Motion for Summary Judgment.

## I.    BACKGROUND

## A.    R&R

Magistrate Judge Mayeron exhaustively set forth the complicated facts in this matter in her R&R, and the Court will not repeat those facts here. Briefly, Plaintiff Samuel Edeh contends that Capital One failed to properly credit a payment he made on an overdue credit-card balance, and that when he contacted Equifax to dispute the credit report that included the overdue balance, Equifax did not conduct a reasonable investigation into the matter.

### B.    Post-Hearing Evidence

Edeh has objected to the R&R's finding that his 15 U.S.C. § 1681i(a) claim against Equifax should be dismissed because he failed to produce to the Court any notices of the disputes Equifax sent to Capital One. (Pl.'s Obj. at 3-6 [Doc. No. 79]).  The R&R concluded, "[a]s for Edeh's claims that Equifax failed to provide sufficient information as part of its notice to Capital One, because Edeh failed to provide the Court with the notices Equifax provided to Capital One of the dispute, he has not met his burden of proof as to his FCRA claim."  (R&R at 34.)  However, less than a week after the hearing on the pending Motions, Edeh filed a supplemental affidavit [Doc. No. 72] ("Edeh Supp. Aff."). The supplemental affidavit included the following exhibits:

1.    A December 1, 2010, letter from Edeh to Equifax asking Equifax to verify the accuracy of Edeh's Capital One account as it appeared on his report. Attached to this letter were Edeh's November 3, 2010, letter to Capital One and a cancelled check in the amount of $1,700 made payable to Capital One.  Also attached to the exhibit was an Equifax Automated Consumer Disputed Verification ("ACDV") system summary created by Equifax on December 2, 2010, and sent to Capital One.  The ACDV summary described the dispute as follows: "DISPUTES CURRENT BALANCE - VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE, CURRENT BALANCE."  (Edeh Supp. Aff. Ex. Q.)

2.    A December 21, 2010, letter from Edeh to Equifax asking that it investigate his Capital One account and "show that it appears accurately on the credit file."  This letter enclosed the cashed check to Capital One, Edeh's bank statement indicating the check had been paid, and a facsimile of a letter from Capital One dated December 21, 2010, signed by Loraine Bryan, Recoveries Specialist, confirming that the payment of $1,700 had been received on December 16, 2012, and the account was now paid in full. Bryan's phone number was listed on the facsimile page and below her signature on the letter.  Also attached to the exhibit was a December 22, 2010, ACDV from Equifax to Capital One which described the dispute as follows: "DISPUTES CURRENT BALANCE - VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE, CURRENT BALANCE."  The section entitled "FCRA Relevant Information" stated: "CONSUMER SENT WELLS FARGO BANK STATEMENT OF PERIOD NOVEMBER 18 2010 TO DECEMBER 16 2010 AND CHECK OF WELLS FARGO TO CAPITAL ONE DATED 11 02 2010 WITH CHECK NUMBER 091000019 HAS BEEN PAID USD 1700  PLEASE VERIFY." (Edeh Supp. Aff. Ex. R.)

3.    December 27 and 29, 2010, letters from Edeh to Equifax stating the Capital One account had been paid in full and informing Equifax that it could not

4

continue to rely on Capital One's "erroneous contention to the contrary." Edeh told Equifax in these letters that he had spoken with another Capital One employee, account manager Darik Brown, who also confirmed that the account was fully paid and closed. The December 27 letter again enclosed the facsimile of the December 21, 2010, letter from Bryan thanking Edeh for his $1,700 payment and representing that the account had been paid in full.  Edeh's December 29, 2012, letter also included a hard copy the same letter from Bryan (but now dated December 22, 2010), and provided the phone numbers for Bryan and Brown.  Equifax's December 29, 2010, ACDV described the dispute as: "DISPUTES CURRENT BALANCE - VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE, CURRENT BALANCE."  The section entitled "FCRA Relevant Information" stated: "CONSUMER PROVIDE DOCUMENT STATING THAT PAID IN FULL DATED 12 16 2010 SIGNED BY LORAINE BRYAN."  (Edeh Supp. Aff. Ex. S.)

4.     ACDV communications Capital One received from Equifax in response to his December 1, 21, 27 and 29, 2010, dispute letters as set forth above. (Edeh Supp. Aff. Ex. T.)

## II.     DISCUSSION

### A.     Section 1681i(a)

Given that the R&R failed to address the notices Edeh provided to the Court, the question is whether, in light of this evidence, summary judgment in favor of Equifax is appropriate on Edeh's § 1681i(a) claim.

Section 1681i(a) governs reinvestigations by a credit reporting agency ("CRA") such as Equifax and provides in relevant part:

> . . . . If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency  . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . .
>
>  . . . [T]he agency shall provide notification of the dispute to any person who provided any item of information in dispute . . . . The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.
>
> In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A), (2)(A), (4).  Thus, § 1681i(a) imposes two distinct but related duties on a CRA after a consumer disputes a credit report:  (1) the duty to conduct a "reasonable reinvestigation" into the dispute, including consideration of "all relevant information;" and (2)  the duty to provide notification of the dispute to a furnisher of information such as Capital One, and include "all relevant information regarding the dispute" in that notice.  Edeh contends that Equifax violated both of its § 1681i(a) duties.

6

"To maintain a claim for failure to reinvestigate, a plaintiff must show that the challenged item of information was, in fact, inaccurate." Martin v. First Advantage Background Servs. Corp., Civ. No. 11-3357, 2012 WL 2885355, at *7 (D. Minn. July 13, 2012) (Davis, C.J.) (citing Paul v. Experian Info. Solutions, Inc., 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) (Doty, J.) (collecting cases)). If the information provided by a furnisher is determined to be inaccurate, incomplete or unverifiable, the CRA must delete the information or otherwise appropriately modify the report. 15 U.S.C. § 1681i(a)(5)(A).

A CRA conducts a reasonable reinvestigation by "'notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer.'"[1] Paul, 793 F. Supp. 2d at 1102 (D. Minn. 2011) (quoting Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004) (Doty, J.) (citing 15 U.S.C. § 1681i(a)(1)(A)-(B)). "[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." Gorman, 584 F.3d at 1156. Thus, the furnisher's duties under the FCRA are more onerous than those imposed on CRAs.

---

[1] "Many courts have held that the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law." Garrett v. Experian Info. Solutions, Inc., No. 11-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012) (collecting cases). Indeed, there is no requirement under the FCRA that a CRA send letters and documents provided by a consumer to a furnisher of information, as long as the ADCV accurately and completely summarizes the nature of its contents. Paul, 793 F. Supp. 2d at 1103; see also Morris v. Trans Union LLC, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006) ("Nothing in the FCRA requires Defendant to append a copy of the consumer's dispute letter.").

7

> [T]he furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to "re investigate" . . . .

Paul, 793 F. Supp. 2d at 1103 (quoting Gorman, 584 F.3d at 1156-57); see also 15 U.S.C.

§ 1681s-2(a)(8)(E) (furnisher's duty to investigate).

On the other hand,

> in order to fulfill its obligation under § 1681i(a) "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." . . . "Whether the credit reporting agency has a duty to go beyond the original source will depend" on a number of factors. One of these is "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." A second factor is "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." Whatever considerations exist, it is for "the trier of fact [to] weigh the[se] factors in deciding whether [the CRA] violated the provisions of section 1681i."

Cushman v. Trans Union Corp., 115 F.3d 220, 225-26 (3d Cir. 1997) (quoting Henson v.

CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994).)  The decisive inquiry is whether the

CRA could have determined that the reporting on an account was in error.  Id. at 226

(citation omitted); see also Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1160

(11th Cir. 1991) (the determinative question for liability was "whether the credit reporting

agency could have discovered an error in a particular report through a reasonable

investigation.").  "Thus, a section [1681i(a)] claim is properly raised when a particular

credit report contains a factual deficiency or error that could have been remedied by

uncovering additional facts that provide a more accurate representation about a particular

8

entry." <u>Cahlin</u>, 936 F.2d at 1160.

Edeh argued in his objections that the ACDVs from Equifax to Capital One failed to provide Capital One all of the relevant information necessary to further investigate his claims. (Pl.'s Obj. at 8-9.)  For example, in response to Edeh's December 1, 2010, dispute letter, Equifax failed to communicate to Capital One Edeh's contention that the account was paid in full, failed to reference Edeh's November 3 letter to Capital One, and failed to include any information regarding the cashed check Edeh provided. (<u>Id.</u> at 4.) Edeh argued that if the ACDV had included the documents he submitted to Equifax, it may have prompted Capital One to search its records for a copy of the check and the November 3 letter, instead of increasing his balance from $1714 to $1715.  (<u>Id.</u> at 9.)

Edeh also argued that Equifax's ACDV in response to Edeh's December 21, 2010, dispute letter omitted the date Capital One cashed Edeh's check, misquoted the date on the cancelled check, misquoted the check number, and made no reference to the December 21 paid-in-full letter from Capital One employee Loraine Bryan. (<u>Id.</u> at 4-5.) As for his December 27 and 29, 2010, dispute letters to Equifax, Edeh claimed that Equifax's subsequent ACDV made no reference to Loraine Bryan's affiliation, department, job title, phone number or otherwise provided any information to enable Capital One to determine the identity of the person who authored the paid-in-full letter, and made no reference to Edeh's conversation with Darik Brown, Capital One's account manager, his affiliation, department, job title, or phone number or otherwise provided any information to allow Capital One to determine the identity of Brown. (<u>Id.</u> at 5-6.)

9

Edeh argues that the FCRA requires a CRA to go beyond the information provided by a furnisher of information such as Capital One when it has been alerted to the unreliability of the information.  (Id. at 7 (citing Henson, 29 F.3d 280).  Edeh contends that he provided Equifax with evidentiary support for his claim that his account had been paid in full, including the names of individuals with direct knowledge of the dispute. However, instead of reviewing, considering and investigating the conflicting information Capital One provided to Edeh and Capital One's response via the ACDV, Equifax merely "parroted" back the information in the ACDV.  (Id. at 7-9; Pl.'s Response to Defts.' Obj. ("Pl.'s Resp.") [Doc. No. 84] at 6, 12.)

Equifax counters that Edeh's § 1681i claim fails because he cannot establish that Equifax reported inaccurate information concerning Edeh's Capital One account. Equifax argues that Edeh's § 1681i(a) claim amounts to a legal dispute between him and Capital One as to whether Capital One should have credited Edeh's $1,700 payment to his account on November 5, 2010, the date Capital One received the check at its Utah address, or whether Capital One was not obligated to credit the account on that date because Edeh had not complied with its instructions regarding payments.  (Equifax's Resp. at 7.)  Relying on the R&R's statement that "[t]here is no requirement for a CRA to settle a legal dispute between [a] creditor and a consumer" (id. (citing R&R at 33), Equifax contends that the undisputed evidence showed that Capital One provided conflicting reports regarding Edeh's account during the relevant time period and did not credit the payment until December 15, 2010.  (Id. at 8.)  Therefore, Equifax claims that no

reasonable reinvestigation could have uncovered the inaccuracy Edeh claimed.  (Id.)

Equifax also asserts that summary judgment in its favor is proper because Edeh cannot establish actual damages, which are necessary to maintain a claim for negligent violations of the FCRA, let alone demonstrate the proof necessary to establish a willful violation of the FCRA.  (Id. at 8-9.)

### 1.    Equifax's Communications with Capital One

There is a genuine dispute of material fact as to whether Equifax provided to Capital One all relevant information that it received from Edeh regarding the dispute and consequently, whether it performed a reasonable reinvestigation under § 1681i(a).  First, the ACDV Equifax sent to Capital One following Edeh's December 1, 2010, dispute letter simply informed Capital One that Edeh disputed his current balance.  (Edeh Supp. Aff. Ex. Q.)  Equifax did not provide to Capital One Edeh's November 3 letter to Capital One enclosing the check for $1,700, nor did Equifax notify Capital One of the contents of that letter.  Equifax also did not notify Capital One of Edeh's claim that he had paid off his account in full or provide Capital One with the copy of Edeh's cancelled check.[2]

Second, while the December 22, 2010, ACDV from Equifax to Capital One

---

[2]       The Court notes that Capital One's ACDV dated December 7, 2010, provided to the Court in connection with Edeh's objections, included the following information from Equifax:  "RCVD WELLS FARGO VIEW CHECK COPY DTD 11.26.2010 CHECK 097 DTD 11.24.2010 AMT $1700 MADE TO CAPITAL ONE./PAID (A2) |||BAL:0?ACT. DT: 11/24/10. . . ." (Edeh Aff. [Doc. No. 78] Ex. 9 (CAP ONE 014)).  Magistrate Judge Mayeron did not have this evidence before her in evaluating the Motions.

referenced both the check Edeh wrote to Capital One and Edeh's Wells Fargo bank statement showing the payment (Edeh Supp. Aff. Exs. R, T ((CAP ONE 011)), it did not make any mention of, much less describe, the contents of the letter from Loraine Bryan, Capital One's Recoveries Specialist, in which Capital One acknowledged receipt of the $1,700 payment and confirmed that Edeh's account had been paid in full.  (Id. Ex. R). Evidence that an agent from Capital One confirmed that Edeh's account had been paid in full is certainly relevant to the issue of whether Equifax was accurately reporting the status of Edeh's account at that time.

Third, the December 27 and 29, 2010, letters from Edeh to Equifax again stated that Edeh had received a letter from Capital One confirming that the account had been fully paid; and also stated that Edeh had spoken to a Capital One account manager, Darik Brown, who had likewise confirmed that Edeh's account had been paid and closed.  (Id. Ex. S.)  Edeh's letters included the telephone numbers for both of the Capital One employees with whom he had contact, and also included a copy of the letter from Loraine Bryan.  (Id.)  Equifax's December 29, 2010, ACDV informed Capital One that Edeh had provided a document from Loraine Bryan stating that his account had been paid in full on December 16, 2010.  (Id. Exs. S, T (CAP ONE 005)).  But this communication did not identify Bryan's position, provided no contact information for her, and made no mention of Edeh's conversation with Darik Brown.

Considering the information and supporting documents that Edeh provided to Equifax to verify that his account had been paid in full and the cursory information that

Equifax in turn communicated to Capital One via the ACDVs, this Court cannot conclude as a matter of law that Equifax provided Capital One with all relevant information regarding the dispute that it had received from Edeh as § 1681i(a)(2)(A) requires.

Equifax's argument that it was merely stuck in the middle of a legal dispute between Edeh and Capital One as to when Edeh's payment should have been credited to Edeh's account does not absolve Equifax of its responsibilities under the FCRA and ignores the fact that the dispute over the timing of the payment was not the only dispute Edeh presented.  For example, as of December 1, 2010, when Edeh sent Equifax the letter contesting the accuracy of the Capital One account on his credit report, Capital One had already cashed Edeh's $1,700 check, but still had not determined the account to which it should be applied.  At that point, Edeh was still seeking to establish that the cashed check had been credited to his account and to confirm that the account had been paid in full. Had Equifax included in its ACDV the information Edeh provided regarding the cashed check, Capital One might have been able to determine the identity of the account to which the check should be applied and could therefore have applied the payment to Edeh's account long before December 15, when the payment was ultimately credited to his account.  (Edeh Aff. [Doc. No. 21] Ex. K.)  Further, although the check had been credited to Edeh's account as of Edeh's December 21, 27, and 29 inquiries to Equifax, and despite the fact that two Capital One representatives told Edeh that his account was paid in full, Capital One continued to insist in its communications with Equifax that there was an outstanding balance on the account.  Only Equifax was privy to this discrepancy.  A

13

factfinder could reasonably conclude that Equifax failed to provide Capital One with all of the relevant information Equifax had regarding Edeh's account.

### 2.      Equifax's Review of Information

In addition, the FCRA requires a CRA such as Equifax to "review and consider all relevant information" when conducting a reinvestigation.  15 U.S.C. § 1681i(a)(4); see also Saenz v. Trans Union, LLC, 621 F. Supp.2d 1074, 1088 (D. Or. 2007) (finding that FCRA requires a CRA "independently to 'review and consider all relevant information submitted by the consumer'") (quoting 15 U.S.C. § 1681i(a)(4)).

Saenz is particularly instructive on the issue of a CRA's duties to review all information.  In that case, Saenz's credit report contained inaccurate information, and Saenz disputed the inaccurate information by providing the CRA, Trans Union, with documents supporting his claim that the creditor's balance had been paid in full.  621 F. Supp. 2d at 1082.  Trans Union relied exclusively on its ACDV system to conduct its § 1681i reinvestigation.  Id.  The court concluded that Trans Union's exclusive reliance on automated data-matching procedures did not satisfy its reinvestigation obligations to provide all relevant information to the furnisher or to consider and review that information independently.  Id.

> [W]here, as here, exclusive reliance on an ACDV system causes a reporting agency entirely to neglect its Section 1681i(a)(2)(B) obligation to provide "all relevant information" to the creditor from whom it received disputed information, or its Section 1681i(a)(4) obligation to consider and review that information independently[,] [a] reasonable jury could infer from [the CRA's] failure to provide [the furnisher] with copies or a summary of the evidence it received, or to conduct any independent consideration or investigation of [the

consumer's] assertion that the balance had been paid, that the agency's reinvestigation was unreasonable.

Id. at 1083-84.

As in <u>Saenz</u>, Equifax received a copy of Edeh's cashed check as early as December 1, 2010; had on three occasions been provided the letter from Capital One's Loraine Bryan stating that the balance had been paid in full; and had been given the contact numbers for her and another Capital One employee, Darik Brown, who had likewise represented that the balance on Edeh's account had been paid in full.  On this record, there is a genuine dispute of material fact as to whether Equifax fulfilled its duty to review and consider all relevant information or whether Equifax should have gone beyond Capital One's response in the ACDV.  In other words, viewing the facts in a light most favorable to Edeh, a jury could reasonably determine that, based on the information and supporting materials provided by Edeh, Equifax was on notice that the information provided to it by Capital One in the ACDV regarding the account balance was inaccurate, and accordingly, it should have done more to investigate.  Cf. <u>Meyer v. F.I.A. Card Servs., N.A.</u>, 780 F. Supp. 2d 879, 883 (D. Minn. 2011) (Tunheim, J.) ("'Generally, questions regarding the reasonableness of an investigation are best for a jury to determine.'") (quoting <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995)).  For instance, had Equifax contacted Loraine Bryan or Darik Brown, Equifax may very well have uncovered "additional facts that provide a more accurate representation about a particular entry." <u>Cahlin</u>, 936 F.2d at 1160.

Finally, in light of Edeh's repeated communications to Equifax and Equifax's failure to fully apprise Capital One of the substance of Edeh's disputes, there is a genuine dispute of material fact as to whether Equifax's conduct constituted a willful violation of the FCRA.

> **3.      Damages**

Damages are an essential element of a claim for a negligent violation of the FCRA. Reed, 213 F. Supp. 2d at 1114.  Equifax asserts that summary judgment is appropriate because Edeh has presented no evidence to establish that he suffered any actual damages.

In response to Equifax's motion for summary judgment, Edeh argued that even without addressing the out-of-pocket expenses he incurred, his difficulty in obtaining credit and outright credit denial due to the inaccurate information as well as his resulting mental pain and anxiety are adequate to meet FCRA's actual-damage requirement. (Edeh's Reply [Doc. No. 51] at 9.)  He also asserted that he is entitled to punitive damages for willful violations of FCRA by Equifax.  (Id. at 9-10.)  Edeh's Second Amended Complaint alleges that he suffered credit denials, difficulty in obtaining credit, and emotional distress.  (Pl.'s Resp. at 9.)  Moreover, Edeh pointed out that Equifax itself provided some evidence that third-party creditors viewed Edeh's inaccurate Equifax credit report, and that the credit report may have contributed to adverse credit actions. (Id.)  Edeh also claims actual damages in the form of mental distress.[3]  (Id.)  Thus, he

---

[3]  15 U.S.C. § 1681n provides for actual damages not less than $100 and not more than $1,000, punitive damages, and costs for willful violations.  Section 1681o provides

requests the opportunity to submit evidence that he suffered actual damages, and contends that summary judgment is not warranted on this issue.  (Id.)

Equifax's motion for summary judgment, like the other parties' motions, was brought shortly after the commencement of this action—even before this Court issued its pretrial scheduling order and set the date for disclosures required by Rule 26(a)(1) of the Federal Rules of Procedure, and the September 1, 2012, cut-off for fact discovery.  [Doc. No. 54.]  "Although discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time for discovery."  Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (internal quotation marks and citation omitted).  Edeh must be allowed to discover and submit evidence as to his damages.  Summary judgment is therefore not appropriate on this issue.

### 4.    Conclusion

Having examined all of the evidence, including evidence either not submitted to Magistrate Judge Mayeron or not addressed in the R&R, the Court concludes that there is a genuine dispute of material fact as to whether Equifax complied with its § 1681i(a) duties.  In addition, the Court finds that Edeh should be given the opportunity to present evidence to support a claim for damages under the FCRA.  For all of these reasons, this

---

for actual damages and costs for negligent violations of the FCRA.  In addition, at least one court in this District has found that "actual damages" can include mental anguish. Meyer v. F.I.A. Card Servs., N.A., 780 F. Supp. 2d 879, 884-85 (D. Minn. 2011) (Tunheim, J.).

Court declines to adopt the R&R's recommendation that Equifax is entitled summary judgment on Edeh's § 1681i(a) claim.

**B.      Section 1681g**

The R&R also recommended dismissal of Edeh's non-disclosure claim against Equifax.  This claim arises out of Equifax's alleged failure to provide an accurate address for an entity that made an inquiry into Edeh's credit history, Rental Research.  The Second Amended Complaint contends that Equifax violated § 1681i(a), but in his reply memorandum Edeh maintained that Equifax's conduct violated § 1681g.  The R&R correctly determined that Edeh could not amend his Complaint with an argument in a reply memorandum.  (R&R at 39.)

Edeh now asks for permission to amend his Complaint to assert a cause of action under § 1681g.  He attached an amended pleading to his objections.  But this is not the proper procedure for amending a complaint.  Rather, should Edeh wish to amend his Second Amended Complaint, he must bring a motion to that effect, attaching the proposed Third Amended Complaint and establishing good cause for failing to plead a cause of action under § 1681g in his previous Complaints.  At that point, the Magistrate Judge can determine whether Edeh has in fact established good cause and should be allowed to amend.[4]

---

[4]  The Court notes that § 1681g prohibits civil liability for CRAs who report information in good faith under that section.  15 U.S.C. § 1681g(e)(7).  Thus, Edeh must plead, and ultimately prove, that Equifax's actions amounted to bad faith.

## C.    State-Law Claims

Finally, Edeh objects to the R&R's determination that his state-law claims for defamation, negligence, and intentional or negligent interference with economic expectancy are preempted by the FCRA.  There is no dispute that the FCRA preempts common-law claims unless those claims are based on "malice or willful intent to injure" the consumer.  15 U.S.C. § 1682h(e).  Edeh contends that the evidence he presented establishes that Equifax acted with "reckless disregard as to the truth or falsity of the information" it sent to Capital One.  (Pl.'s Obj. at 11.)

The standard for common-law claims, however, is not reckless disregard.  Rather, it is a much higher standard, higher even than the malice or willfulness necessary to support a claim for punitive damages under the FCRA.  Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004) (Doty, J.).  Edeh did not allege this high degree of malice or willful intent in his Second Amended Complaint, and no evidence in the record supports that allegation now.  Rather, as Edeh described Equifax's conduct both in his objections and in his Second Amended Complaint, at most Equifax acted with reckless disregard.  (2d Am. Compl. ¶ 50.)  This is insufficient to meet the higher standard of malice that § 1681h(e) requires.  Magistrate Judge Mayeron correctly concluded that Edeh's state-law claims were preempted.

## D.    Motion to Stay Discovery

The R&R recommended that Defendants' Motions to Stay Discovery be denied as moot.  Given this Court's conclusion that Edeh's § 1681i(a) claim against Equifax

survives summary judgment, however, it may be necessary for the parties to engage in limited discovery. The Court cannot make that determination on this record, and thus will deny the Motions without prejudice to Equifax bringing another discovery Motion before Magistrate Judge Mayeron, should Equifax continue to believe that further discovery is unnecessary or inappropriate.

## III.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   The Court **ADOPTS in part** and **DECLINES to adopt in part** the R&R [Doc. No. 75];

2.   Plaintiff's Motion for Partial Summary Judgment [Doc. No. 19] is **DENIED**;

3.   Capitol One Bank (USA), N.A.'s Cross Motion for Summary Judgment [Doc. No. 32] is **DENIED AS MOOT**;

4.   Equifax Information Services LLC's Motion for Summary Judgment [Doc. No. 43] is **GRANTED in part** and **DENIED in part**;

5.   Capitol One Bank (USA), N.A.'s Motion to Stay Discovery [Doc. No. 58] is **DENIED AS MOOT**; and

6.   Equifax Information Services LLC's Motion to Stay Discovery [Doc. No. 62] is **DENIED without prejudice**.

Dated:    September 21, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge