# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

SAMUEL N. EDEH,                                           CIVIL NO. 11-2671 (SRN/JSM)

      Plaintiff,

v.                                                                                  **MEMORANDUM
                                                                                    OPINION AND ORDER**

EQUIFAX INFORMATION SERVICES, LLC,

      Defendant.

---

Samuel N. Edeh, 619 East Center Street, Apartment 1, Rochester, Minnesota 55904, pro se.

Andrew T. Shern and Christopher G. Angell, Murnane Brandt, PA, 30 East 7th Street, Suite 3200, St. Paul, Minnesota 55101; J. Anthony Love and Brian J. Olson, King & Spalding, LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

      This matter is before the Court on Defendant Equifax Information Services, LLC's Motion for Summary Judgment [Doc. No. 175] and Plaintiff Samuel N. Edeh's Motion for Summary Judgment [Doc. No. 192].[1] These motions were decided on the papers. For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

---

[1]      The balance of Edeh's motion addressed a request for sanctions and the removal of certain confidential designations made by Equifax on documents it had produced to Edeh. These portions of Edeh's motion were addressed by a separate order issued by United States Magistrate Judge Janie S. Mayeron.

## I.   BACKGROUND[2]

On May 16, 2003, Plaintiff Samuel Edeh ("Edeh") opened a credit card account with Capital One Bank (USA), N.A. ("Capital One").  (Napolitano Aff. ¶ 5 [Doc. No. 35].)  On May 19, 2006, Edeh made the last payment on his credit card balance prior to having his account charged off as bad debt by Capital One on December 21, 2006.  (Id. ¶¶ 6, 7.)

On September 17, 2009, Capital One sent a letter to Edeh stating that his account was severely delinquent, the account had been charged off as bad debt, and the full balance of $1,438.16 was due immediately.  (Edeh Aff. dated Oct. 31, 2011 ("First Edeh Aff."), Ex. C at 2 [Doc. No. 21].)  This letter also notified Edeh there could still be a balance on his account after Capital One received payment because interest, late charges, and other charges change day-to-day.  (Id., Ex. C at 3.)  Subsequently, Capital One sent Edeh a billing statement for the period of June 24, 2010, through September 23, 2010 ("June-September 2010 statement"), notifying him of an outstanding balance of $1,671.61.  (Napolitano Aff. ¶ 8 & Ex. A at 1; First Edeh Aff. ¶ 10 & Ex. E at 1.)

---

[2]    The parties brought motions for summary judgment shortly after the inception of this case [Doc. Nos. 19, 43].  Apart from the evidence Edeh submitted to support his claim for damages, (see Edeh Aff. dated June 12, 2013 ("Third Edeh Aff.") [Doc. No. 182]), and the requests for admissions deemed admitted by Magistrate Judge Mayeron, which this Court has allowed Equifax to withdraw [Doc. No. 251], the parties' current motions rely, for the most part, on the same facts used to support their earlier motions.  (See Def.'s Mot. for Summ. J. [Doc. No. 175] (itemizing affidavits previously filed with the Court); Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 14 [Doc. No. 181] (citing Doc. No. 20 at 2-4); Edeh Aff. dated June 28, 2013 ("Fourth Edeh Aff.") [Doc. No. 194]).

On November 3, 2010, Edeh sent a letter and a check in the amount of $1,700 to Capital One, which was received by Capital One on November 5, 2010; the check was ultimately received by Capital One's payment processing center on or about November 9, 2010.  (Missimer Aff. ¶¶ 5, 7 & Ex. 1 [Doc. No. 36]; Edeh Aff. dated Mar. 13, 2012 ("Second Edeh Aff."), Ex. Q (EIS-EDEH-0109) [Doc. No. 72]; Wright Aff. ¶ 5 [Doc. No. 37]; First Edeh Aff. ¶ 9 & Ex. D at 1.)  However, Capital One was unable to process the check upon arrival, as the payment coupon was not enclosed, the check contained no identifying information, and the signature was illegible.  (Wright Aff. ¶ 5; First Edeh Aff., Ex. D at 2 (check in amount of $1,700).)  The check was forwarded to Capital One's research team, which could not discern to whom the check should be credited, given the lack of identifying information.  (Wright Aff. ¶ 6.)  On November 24, 2010, Capital One cashed the $1,700 check and placed it in the "unclaims" account pending further information.  (Id. ¶ 7; First Edeh Aff. ¶ 9 & Ex. D at 2.)

On November 28, 2010, Equifax received via facsimile a letter from Edeh dated November 25, 2010, in which Edeh stated that "the furnisher agreed to remove the account from my credit reports.  Please investigate this account so it can be removed from my credit file."  (Smith Decl. dated Dec. 12, 2011 ("First Smith Decl.") ¶ 70 & Ex. P [Doc. No. 42].)  On November 29, 2010, Equifax sent an Automated Consumer Disputed Verification ("ACDV") system summary[3] to Capital One, which described

---

[3]    Equifax's reinvestigation involves using the ACDV system summary to advise the creditors of a consumer's dispute and asks a creditor to verify the accuracy of the data, or to advise it of any changes that may be needed.  (Smith Decl. dated Dec. 16, 2011 ("Second Smith Decl.") ¶ 19 [Doc. No. 46].)  Once Equifax receives a response from a

Edeh's November 28, 2010, dispute as follows:  "CONSUMER STATES INACCURATE INFORMATION.  VERIFY COMPLETE ID AND ACCOUNT INFORMATION."  (Third Edeh Aff., Ex. B (EIS-EDEH-0099).)  On November 30, 2010, Capital One responded that the account information had been reported correctly. (First Smith Decl. ¶ 71.)  On November 30, 2010, Equifax sent Edeh the results of its reinvestigation, indicating that "Equifax verified that this item belongs to you" and enclosing additional information provided by Capital One, including the balance of the Capital One account in the amount of $1,713.  (Id. ¶ 72; First Edeh Aff., Ex. G.)

On December 1, 2010, Capital One sent a letter to Edeh in response to a dispute as to the amount he owed, in which Capital One maintained that its investigation showed that Edeh had an outstanding balance of $1,714.17.  (First Edeh Aff., Ex. H.)  On the same day, Equifax received a letter via facsimile from Edeh, which stated:  "Per CAPITAL ONE BANK USA . . . , please verify the accuracy of this account and demonstrate that it appears correctly in my credit file.  To aid your inquiry, I enclosed documents indicating the account was paid in full and that the creditor agreed to remove it from my credit file."  (First Smith Decl., Ex. R; First Edeh Aff., Ex. P at 1.)  Attached to this letter were documents that Edeh claimed indicated his account had been paid in full and that Capital One had agreed to remove the account from his credit file:  a November 3, 2010, letter to Capital One from Edeh including a check payable to Capital

---

creditor, it makes any necessary updates to the consumer's credit file and sends the consumer the results of the reinvestigation along with an explanation of the consumer's rights.  (Id. ¶ 20.)

One for $1,700, and the cancelled check in the amount of $1,700 made payable to Capital

One.  (Second Edeh Aff., ¶ 2 & Ex. Q (EIS-EDEH-0109 to EIS-EDEH-0110).)

On December 2, 2010, Equifax sent an ACDV system summary to Capital One,

which described Edeh's December 1, 2010, dispute as follows:  "DISPUTES CURRENT

BALANCE – VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY

PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE,

CURRENT BALANC [sic]."  (Id. (EIS-EDEH-0111).)  On December 3, 2010, Capital

One responded that the account information belonged to Edeh and updated the balance

and past due amount.  (First Smith Decl. ¶ 74.)  On the same day, Equifax sent the results

of its reinvestigation to Edeh, notifying him that his Capital One account balance had

been updated to $1,715.  (First Edeh Aff., Ex. I.)  On December 3, 2010, Edeh sent a

letter to Capital One asserting that his "account has been paid in full" and noting that he

had enclosed the dispute submitted to Capital One through the credit reporting agency

("CRA").  (Id., Ex. P at 5.)  Edeh asked that Capital One investigate his account so that it

could be modified accordingly. (Id.)

On December 7, 2010, Edeh notified Capital One's representative, Darik Brown,

that he had faxed Capital One a copy of the cashed check, as "Alma" at Capital One had

previously requested, and that he wanted a confirmation that the Capital One account had

been fully satisfied in order to finalize a loan application.  (Id., Ex. P at 6.)  On December

15, 2010, Capital One notified Edeh that it had resolved the payment discrepancy and had

applied the necessary credit to his account.  (Id., Ex. K.)  The balance on Edeh's account,

as of that date, was $22.93.  (Id.)  According to Capital One, it had received

correspondence from Edeh regarding the $1,700 check, which caused it to remove Edeh's payment from the "unclaims" account and to credit it to Edeh's account.  (Napolitano Aff. ¶ 9.)  Capital One refunded the finance charges on Edeh's account for December 2010 because it credited the $1,700 payment as having been received on November 24, 2010, when Capital One cashed the check.  (Id. ¶ 10.)  However, by November 24, 2010, the account balance had exceeded $1,700, so a small balance ($22.93) remained on Edeh's account after the $1,700 payment had been credited.  (Id. ¶ 11.)

On December 20, 2010, Edeh sent a letter to a "Loraine" at Capital One, enclosing a cashed check and bank statement showing that the check was cashed on November 24, 2010, and requesting that Capital One fax a letter to him indicating that the account had been paid in full and had a zero balance.  (First Edeh Aff., Ex. P at 7.)  On December 21, 2010, Capital One sent a letter to Edeh, signed by Loraine Bryan, Recoveries Specialist, thanking him for his recent payment of $1,700, which it had received on December 16, 2010.  (Id., Ex. L at 1.)  This letter informed Edeh that the "balance on your Capital One account is now paid in full" and that "[o]nce the payment clears, we'll notify the following credit reporting agencies that your account has been paid in full."  (Id.)  Capital One also stated that the "credit reporting agencies may take up to 60 days to update the information on your credit report."  (Id.)  The letter also included Bryan's telephone number.  (Id.)

On December 21, 2010, Edeh faxed a letter to Equifax, which provided:

Please investigate this account and show that it appears accurately on my credit file.  To aid your investigation, enclosed please find cashed check as well as current bank statement indicating that the account was paid in full.

> The full payment check cleared my bank account on 11/24/2010.  Also enclosed is a letter from Capital One confirming that the account has been paid in full.  Please forward these materials to Capital One for proper investigation of this account.  Thank you.

(First Smith Decl., Ex. T; Second Edeh Aff., Ex. R (emphasis omitted).)  This letter enclosed the cashed $1,700 check to Capital One, Edeh's bank statement showing the check had been cashed, and the December 21, 2010, letter from Bryan at Capital One. (Second Edeh Aff., Ex. R.)

On December 22, 2010, Equifax sent an ACDV system summary to Capital One, which described Edeh's December 21, 2010, dispute as follows:  "DISPUTES CURRENT BALANCE – VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE, CURRENT BALANC [sic]."  (Id.)  In the section entitled "FCRA Relevant Information," Equifax stated:  "CONSUMER SENT WELLS FARGO BANK STATEMENT OF PERIOD NOVEMBER 18 2010 TO DECEMBER 16 2010 AND CHECK OF WELLS FARGO TO CAPITAL ONE DATED 11 02 2010 WITH CHECK NUMBER 091000019 HAS BEEN PAID USD 1700  PLEASE VERIFY."  (Id.)  On December 23, 2010, Capital One responded that the account balance information should be updated to report a $9 balance, Equifax updated Edeh's credit file to reflect a $9 balance on the Capital One account, and Equifax notified Edeh of the results of the reinvestigation.  (First Smith Decl. ¶¶ 77-78; First Edeh Aff., Ex. M.)

In a letter to Capital One dated December 24, 2010, Edeh contested Capital One's assertion that he owed $22.93 as of December 15, 2010, and its claim that he owed $9 as

of December 24, 2010.  (First Edeh Aff., Ex. N at 1.)  Edeh relied on the December 21, 2010, letter from Bryan representing that Equifax had received his check on December 16, 2010, which he enclosed.  (Id.)  Edeh also enclosed the U.S. Mail delivery confirmation receipt showing that Capital One received the check on November 5, 2010. (Id.)  According to Edeh, when the $1,700 check had been received by Capital One on November 5, 2010, the balance on his account was $1,698.54 or less.  (Id.)  Thus, Edeh asked Capital One to refund the excess amount paid by him.  (Id.)

Capital One sent a billing statement to Edeh for the period of September 24 through December 23, 2010.  (Id., Ex. E at 2.)  The statement listed the previous balance on Edeh's account as $1,671.61.  (Id.)  The statement also set forth the interest charged to the account during this period:  an $18.78 interest charge on October 23; a $19.40 interest charge on November 23; and a $13.77 interest charge on December 16.  (Id.)  The payments, credits, and adjustments applied to the account included a November 24 payment of $1,700 and a December 16 interest charge reversal of $13.75.  (Id.)  After applying Edeh's payment and the interest charge reversal ($1,713.75) to the previous balance and the interest assessed during the period ($1,723.56), a balance of $9.81 remained on Edeh's account.  (Id.)

On December 27, 2010, Edeh faxed a letter to Equifax which stated:

I am in receipt of your investigation result issued under Dispute Confirmation Number 0356004115. Please understand that this account has been paid in full, and that you cannot continue to rely on Capital One's erroneous contention to the contrary.   I provided you with several documents—including enclosed letter of December 21, 2010 from Loraine Bryan, Capital One's Recoveries Specialist—confirming that there's no unpaid balance on the account. The letter specifically states: "*The balance*

*on your Capital One account is now paid in full ... Thanks for paying your outstanding balance."* What is likely taking place is that Capital One is using its automated system to investigate the account and it's ignoring relevant information.   Who would you rather trust—the result of the automated system or confirmation from *actual* account specialist, Ms. Bryan?

(First Smith Decl., Ex. V (emphases in original).)  The letter also included the telephone number for Bryan at Capital One, and the December 21, 2010, letter from Bryan to Edeh stating that his balance had been paid in full.  (Id.)

On December 29, 2010, Edeh faxed another letter to Equifax stating:

Just yesterday, I received the mailed copy of the correspondence from Loraine Bryan, Capital One's Recoveries Specialist, confirming that this account in now fully paid.  I also just spoke with Darik Brown, an Account Manager at Capital One, and he too confirmed that the account has been paid and closed.

(Id.)  This letter attached the letter from Bryan and included the telephone numbers for Bryan and Brown.  (Id.)

On December 29, 2010, Equifax sent an ACDV to Capital One in response to Edeh's inquiry, which described the dispute as follows:  "DISPUTES CURRENT BALANCE – VERIFY ORIGINAL LOAN AMOUNT, SCHEDULED MONTHLY PAYMENT AMOUNT, ACTUAL PAYMENT AMOUNT, AMOUNT PAST DUE, CURRENT BALANC [sic]."  (Second Edeh Aff., Ex. S.)  In the section entitled "FCRA Relevant Information," Equifax stated:  "CONSUMER PROVIDE DOCUMENT STATING THAT PAID IN FULL DATED 12 16 2010 SIGNED BY LORAINE BRYAN."  (Id.)  On December 31, 2010, Capital One responded that the account balance

9

information was correct, including the $9 balance, and Equifax sent the results of this reinvestigation to Edeh.  (First Smith Decl. ¶¶ 80-81; First Edeh Aff., Ex. M at 2.)

On December 31, 2010, Edeh sent a letter to Capital One acknowledging that he had received the billing statement for the period of September 24 through December 23, 2010, showing a balance of $9.81.  (First Edeh Aff., Ex. N at 2.)  Edeh claimed that this balance was incorrect because Capital One received his $1,700 payment on November 5, 2010.  (Id.)  Edeh asserted that applying the daily interest rate for the 42 calendar days between September 24 (the start of the billing period) and November 5 (date of payment) to the outstanding balance resulted in an interest charge of approximately $23.97 and an ultimate balance, as of November 5, of $1,695.59.  (Id.)  As he had made a payment in the amount of $1,700, Edeh claimed that Capital One owed him money.  (Id.)  Edeh notified Capital One that the Fair Credit Billing Act requires a prompt posting of payment upon receipt and posting no later than 5 days after receipt to the extent that a consumer did not follow a creditor's payment procedures.  (Id.)  On January 2, 2011,[4] Edeh sent a follow-up letter to Capital One claiming that it appeared that it had applied a higher interest rate than the 28.1% rate applicable to his account.  (Id. at 3.)

On January 19, 2011, Capital One sent a letter to Edeh thanking him for the payment of $15.00 that it received on January 5, 2011, and stating that the balance had been paid in full.  (Fourth Edeh Aff., Ex. F.)  Capital One also indicated that it would

---

[4]      The letter is dated January 2, 2010.  (See First Edeh Aff., Ex. N at 3.)  However, because the letter was written as a follow-up to Edeh's December 31, 2010, letter, (see id.), it is evident the correct date of the letter is January 2, 2011.

notify the credit reporting agencies that the account had been paid in full and that it could

take up to 60 days for the credit agencies to update his credit report.  (Id.)

On January 19, 2011, Edeh sent a letter to Equifax stating that he was in receipt of

its reinvestigation, in which it had represented that Capital One had verified the debt as

being reported correctly, and asked that it conduct a meaningful reinvestigation, which

included considering all materials provided by the consumer.  (Id. ¶ 6 & Ex. F.)  The

letter enclosed the December 22, 2010, letter from Bryan stating that Capital One had

received his $1,700 payment on December 16 and that the account was paid in full, and

the January 19, 2011, letter from Capital One thanking him for his payment of $15.00

that it received on January 5, 2011, and stating that the balance had been paid in full.

(Id.)  Edeh never received any reinvestigation results from Equifax regarding the January

19 dispute and never received from Equifax any notice that this dispute was deemed to be

frivolous or irrelevant.  (Third Edeh Aff. ¶ 2.)

Capital One sent a check, dated February 11, 2011, to Edeh in the amount of

$15.00.  (Second Edeh Aff., Ex. U at 2.)  Equifax's records reflect that Capital One

updated Edeh's account information to reflect a zero balance sometime between January

21 and February 18, 2011.  (First Smith Decl. ¶ 82.)

Edeh initiated this action on September 15, 2011, alleging that Equifax violated

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.  (Compl. ¶ 1 [Doc. No. 1].)

On October 31, 2011, Edeh filed a Motion for Partial Summary Judgment as to Liability

against Defendants [Doc. No. 19], which was denied.  (Mem. & Order at 20 [Doc. No.

92].)  On December 16, 2012, Equifax also filed a Motion for Summary Judgment [Doc.

No. 43], which was granted in part and denied in part.  (Mem. & Order at 20.)  This Court

concluded that there was a genuine dispute of material fact as to whether Equifax had

complied with its duties under 15 U.S.C. § 1681i(a) to provide Capital One with all of the

relevant information Equifax possessed regarding Edeh's account and to review and

consider all relevant information when it conducted its reinvestigation of Edeh's

disputes.[5]  (Id. at 11-17.)

The present matter comes before the Court on the parties' respective motions for

summary judgment with regard to the remaining § 1681i(a) claims against Equifax.

## II.    STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the

non-moving party, there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219

(8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a

---

[5]     In addition, the Court ruled on cross-motions for summary judgment relating to
Capital One.  In her Report and Recommendation, the Magistrate Judge found, in
relevant part, that Capital One had incorrectly credited the payment as of the date the
check had been cashed (November 24, 2010), and that there was a dispute of fact as to
the date the payment should have been credited (November 5 or November 10, 2010).
(See R & R at 20-24 [Doc. No. 75].)  Capital One and Edeh filed objections to this
portion of the Report and Recommendation, but while the objections were pending,
Capital One and Edeh agreed to resolve Edeh's claims against Capital One and
subsequently filed a stipulation of dismissal with prejudice as to Capital One [Doc. No.
89].  Thus, the cross-motions as to Capital One were denied as moot.  (Mem. & Order at
20 [Doc. No. 92].)

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327.

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Id. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). However, a party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256; see also Krenik v. Cnty. of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

In addition, when deciding a motion for summary judgment, a court can only consider admissible evidence. Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004); see also Stuart v. Gen. Motors Corp., 217 F.3d 621, 636 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)."). For example, a party cannot rely on hearsay in order to avoid summary judgment. Mason v. Corr. Med. Servs., Inc., 559 F.3d 880, 885 (8th Cir. 2009); see also Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923 (8th Cir. 2004).

## III.    THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### A.    <u>Summary of Equifax's Arguments</u>

Equifax argues that Edeh's § 1681i(a) claim fails as a matter of law, as he cannot establish that the information reported regarding his Capital One account was inaccurate. (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Supp. Mem.") at 16-18 [Doc. No. 176].)  Specifically, Equifax asserts that its reports prior to December 15, 2010—that a balance remained on Edeh's Capital One Account—were "technically accurate" because Capital One had not yet credited the $1,700 check sent by Edeh.  (<u>Id.</u> at 17; <u>see</u> <u>also</u> Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Opp. Mem.") at 11 [Doc. No. 242].)  In addition, Equifax contends that it correctly reported the balance on Edeh's account once Capital One had credited the account effective November 24, 2010, and that it had no obligation to resolve a legal dispute between Edeh and Capital One as to when the payment should have been credited to his account (November 5 or November 24, 2010) or the resulting interest charges that should have been assessed.  (Def.'s Supp. Mem. at 17-20; <u>see</u> <u>also</u> Def.'s Opp. Mem. at 11-14.)  Equifax also notes that as of December 23, 2010, it had updated Edeh's credit file to reflect a remaining balance of $9, which Edeh paid to Capital One two weeks later.  (Reply in Further Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply Mem.") at 4-5 [Doc. No. 187].)  Based on all of this evidence, Equifax submits that its reinvestigation was validated and in any event, Edeh should not be allowed to bring a collateral attack against it based on any errors committed by Capital One.  (<u>Id.</u> at 6-7.)

With regard to the first dispute, which Edeh sent on November 25, 2010, Equifax maintains that all that Edeh sent to Equifax was a letter claiming that Capital One agreed to remove the account from his credit report, without any further supporting materials, making its reliance on Capital One's verification of the debt reasonable.  (Def.'s Supp. Mem. at 23-24.)  As to the second dispute, which Edeh sent on December 1, 2010, and which included the cancelled check and a copy of the letter sent to Capital One, Equifax argues that not mentioning the cancelled check in its ACDV was reasonable given that it had no reason to believe that Capital One did not have this information.  (Id. at 24.)

Regarding the December 21, 2010, dispute, Equifax submits that it notified Capital One of the letter from Bryan along with the cancelled check, and that it should not be required to provide to the furnisher the contact information of its own employees or copies of the letters in its own files.  (Id. at 25.)  According to Equifax, it reviewed and considered the information received from Edeh and forwarded the relevant portions of that information to Capital One, and it is not liable under § 1681i(a) merely because it did not forward every document received from Edeh to Capital One.  (Id. at 30.)  Further, Equifax claims that it cannot be liable for failing to provide to Capital One information Edeh had already provided to Capital One, because even if it had provided this information to Capital One, Capital One's response regarding Edeh's outstanding balance would not have changed.  (Id. at 31-32.)  In addition, Equifax contends that Edeh's January 19, 2011, dispute[6] cannot be added to this case at this stage of the proceedings, as

---

[6]     Equifax incorrectly referred to this dispute as occurring in 2013.  (See Fourth Edeh Aff. ¶ 6 & Ex. F.)

it was only mentioned for the first time in conjunction with the instant motions.  (Def.'s

Opp. Mem. at 9-10.)

As for allegations of willful violations of the FCRA, Equifax asserts:  (a) no jury

could conclude that its response to Edeh's November 25, 2010, dispute was willful given

that the only evidence it had before it was a letter from a consumer claiming that Capital

One agreed to remove the account from his credit report; (b) Equifax's investigation of

the December 1, 2010, dispute was reasonable given that Capital One was in possession

of Edeh's documentation, and Equifax knows of no court decision that has concluded that

a failure to provide documentation to a creditor that the creditor already possesses

amounts to a negligent, let alone a willful, violation of the FCRA; and (c) Equifax's

reinvestigation of Edeh's December 21 and 29, 2010, disputes cannot amount to a willful

violation of the FCRA, as Equifax informed Capital One that Edeh had a cancelled check

and had received letters from Capital One employees stating that his balance was zero,

the remaining balance relating to an interest charge pertained to a legal dispute between

Edeh and Capital One, and Equifax did not have the benefit or guidance of an appellate

court or the Federal Trade Commission to suggest that its actions violated the FCRA.

(Def.'s Supp. Mem. at 33-36; Def.'s Reply Mem. at 11-13.)[7]

As to damages, Equifax argues that Edeh cannot establish:  (1) actual economic

damages, considering that he was able to open a credit card account and obtain a fixed-

---

[7]    Equifax also made arguments regarding the effect of the requests for admissions deemed admitted by Magistrate Judge Mayeron.  However, because this Court has allowed Equifax to withdraw these admissions [Doc. No. 251], there is no need to address Equifax's arguments regarding the effect of these admissions.

rate auto loan and an unsecured loan no later than January 21, 2011; or (2) emotional distress caused by the alleged inaccurate information contained in his Equifax credit report. (Def.'s Supp. Mem. at 20-23.) Specifically, Equifax claims: (a) any out-of-pocket expenses incurred by Edeh in sending dispute letters to CRAs and creditors are not considered expenses in enforcing the statute; (b) Edeh failed to provide any competent evidence that he was damaged by any delay in receiving credit, or that these delays were attributable to Equifax; (c) the denial of credit by Chase Bank on December 27, 2010, was due to a derogatory relationship with Chase Bank, as opposed to the Capital One account at issue; (d) any claims of emotional distress lack merit because he did not suffer an economic injury arising out of the credit dispute; and (e) any embarrassment claimed by Edeh resulting from denial of credit from the Mayo Employee Credit Union does not constitute sufficient proof to support a claim for emotional damages under the FCRA. (Def.'s Reply Mem. at 7-11; Def.'s Opp. Mem. at 2-5, 15-16.)

### B. Summary of Edeh's Arguments

Edeh argues that Equifax's present motion for summary judgment is an improper motion for reconsideration of this Court's Order denying Equifax's initial motion for summary judgment; the motion is barred by the law-of-the-case doctrine; and the motion is improper because Equifax failed to schedule a hearing before filing the motion, failed to file a notice of motion, and did not submit a proposed order in violation of Local Rule 7.1(c). (Mem. of Law in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp. Mem.") at 2-14 [Docket No. 181].)

As to the merits of his § 1681i(a) claims, Edeh referred the Court to the pleadings and documents filed in support of his first motion for partial summary judgment, and in opposition to Equifax's first motion for summary judgment.  (Id. at 14, 16-17 (citing Doc. Nos. 19, 20, 51, 70, 72, 78, 79, 84).)  In addition, Edeh claims his Amended First Set of Requests for Admissions, previously deemed admitted by the Magistrate Judge, are controlling.  (Id. at 14-16.)  Edeh points to Request Nos. 30-32 as evidence that a jury may conclude that Equifax failed to review and consider any of the evidence provided to it by him and failed to transmit that relevant information to Capital One, and that these failures were willful.  (Id. at 16.)  Edeh went so far as to argue that, based on the admissions from Request Nos. 1-5, 14-16, 20-33, 38, 46-47, 49-50, and 54-57, "there is no genuine dispute on the issues of liability and willfulness and therefore Plaintiff is entitled to summary judgment on those issues as a matter of law."  (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Supp. Mem.") at 18-23 (emphasis omitted) [Doc. No. 193]; see also Reply in Further Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Reply Mem.") at 2 [Doc. No. 243].)  In particular, Edeh claims that based on the admissions to Request Nos. 29-32, in which Equifax was deemed to have admitted to not considering evidence provided by him (payment letter from Edeh to Capital One, cancelled check, bank statement, and paid-in-full-letters from Capital One), Equifax cannot claim that it reviewed and considered any of the documents provided by Edeh as required by § 1681i(a), much less that it provided Capital One with all of the relevant information. (Pl.'s Supp. Mem. at 24-25.)  Likewise, Edeh argues that Equifax's admissions to

Request Nos. 5, 14, 15, 29-32, 38, 45-47, and 54-57 establish as a matter of law that Equifax's failure to conduct a reasonable investigation was willful.  (Id. at 26-31.)

 As for his November 25, 2010, dispute, in particular, Edeh claims that he spoke with a representative at Capital One who told him that the account information would be removed from his credit reports and that Equifax should have included this information in its ACDV inquiry to Capital One.  (Pl.'s Opp. Mem. at 20.)  Regarding the final dispute he sent to Equifax on January 19, 2011, Edeh argues that Equifax failed to address this dispute in its memorandum in support of its present motion for summary judgment and failed to produce any document dealing with its reinvestigation.  (Id. at 20-24; see also Pl.'s Supp. Mem. at 25-26.)  Therefore, Edeh argues that Equifax failed to meet its duties under § 1681i(a) relating to this dispute as a matter of law.  (See Pl.'s Supp. Mem. at 25-26.)

 With regard to damages, Edeh contends that even if he was ultimately allowed to obtain credit, he is entitled to actual damages to the extent that he suffered lost time in connection with having to explain the inaccuracy.  (Pl.'s Opp. Mem. at 17-19.)  Edeh also maintains that he was denied credit by Chase Bank as a result of information obtained from Equifax.  (Id. at 19.)  Further, Edeh claims that he suffered emotional distress resulting from Equifax's repeated errors when he applied and was rejected for loans at the Mayo Employee Credit Union and was denied a Chase Bank credit card.  (Third Edeh Aff. ¶¶ 4-17.)

## IV.    DISCUSSION

Section 1681i(a) of the Fair Credit Reporting Act, governing reinvestigations by a

credit reporting agency, such as Equifax, provides in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a
> consumer's file at a consumer reporting agency is disputed by the consumer
> and the consumer notifies the agency . . . of such dispute, the agency shall,
> free of charge, conduct a reasonable reinvestigation to determine whether
> the disputed information is inaccurate . . . .
>
> [T]he agency shall provide notification of the dispute to any person who
> provided any item of information in dispute . . . . The notice shall include
> all relevant information regarding the dispute that the agency has received
> from the consumer or reseller.
>
> *  *  *
>
> In conducting any reinvestigation under paragraph (1) with respect to
> disputed information in the file of any consumer, the consumer reporting
> agency shall review and consider all relevant information submitted by the
> consumer . . . .

15 U.S.C. § 1681i(a)(1)(A), (2)(A), (4).  The plain language of § 1681i(a) places two

obligations on a CRA after a consumer disputes a credit report:  (1) the duty to conduct a

"reasonable reinvestigation" into the dispute, including consideration of "all relevant

information"; and (2) the duty to provide notification of the dispute to a furnisher of

information, such as Capital One, and include "all relevant information regarding the

dispute" in that notice.  A new and distinct claim arises each time that a CRA fails to

conduct a reasonable investigation in response to a dispute brought by a consumer.

Baratto v. Citizens Auto. Finance, Inc., Civ. No. 11-105 (MJD/LIB), 2011 WL 3678676,

at *5 (D. Minn. Aug. 1, 2011) ("[T]he Court concludes that a new and distinct claim

arises each time that Citizens fails to conduct a reasonable investigation in response to a

dispute lodged by Baratto."); see also Larson v. Ford Credit, Civ. No. 06-1811

(JMR/FLN), 2007 WL 1875989, at *4 (D. Minn. June 28, 2007) ("[E]ach re-report of

inaccurate information, and each failure to conduct a reasonable investigation in response

to a dispute, is a separate FCRA violation.").

       After consideration of all of the evidence and arguments submitted by the parties,

the Court concludes that no reasonable jury could find that Equifax failed to conduct a

reasonable reinvestigation of Edeh's November 25, 2010, dispute.  However, the Court

finds that there is a genuine issue of material fact as to the reasonableness of Equifax's

reinvestigation of the December 1, 21, 27 and 29, 2010, disputes.  Further, the Court

concludes that Equifax violated its duty to reinvestigate the January 19, 2011, dispute as a

matter of law.  Even so, any claim under the FCRA for negligent noncompliance with

§ 1681i(a) arising out of these five disputes fails as a matter of law because Edeh has not

presented admissible evidence to establish the requisite actual damages to support such a

claim.  In addition, any claim under the FCRA for willful noncompliance with § 1681i(a)

arising out of these five disputes fails as a matter of law because Edeh has not presented

admissible evidence of the necessary willfulness on the part of Equifax.  Because no

genuine dispute of material fact remains as to at least one element of each of Edeh's

claims, the Court concludes that Equifax is entitled to judgment as a matter of law.[8]

---

[8]        The Court rejects Edeh's procedural arguments as a bar to Equifax's motion for
summary judgment.  Equifax's motion is not a Rule 60(b) motion or a motion for
reconsideration of the Court's decision on the first set of motions for summary judgment,
as this Court authorized the filing of additional dispositive motions as part of its
scheduling order [Doc No. 118].  In any event, the Court never specifically addressed the
November 25, 2010, dispute or actual damages in its first order.  In fact, as to damages,

A.      **Accuracy of the Capital One Balance**

The Court concludes that there is a genuine dispute of material fact as to whether the information listed in Equifax's report was accurate.  As a threshold issue, "[t]o maintain a claim for failure to reinvestigate, a plaintiff must show that the challenged item of information was, in fact, inaccurate."  Martin v. First Advantage Background Servs. Corp., 877 F. Supp. 2d 754, 761 (D. Minn. 2012) (citing Paul v. Experian Info. Solutions, Inc., 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) (collecting cases) ("The weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.")).  For example, in Edeh v. Equifax Information Services, LLC ("Edeh II"), a court in this

the Court specifically concluded that it was too early to rule on this issue, because Edeh had no opportunity to discover and submit evidence as to his damages.  (Mem. & Order at 17 [Doc. No. 92].)  Further, given that the Court did not rule on the November 25, 2010, dispute and actual damages, the law-of-the-case doctrine does not apply.  See Maxfield v. Cintas Corp., No. 2, 487 F.3d 1132, 1134-35 (8th Cir. 2007) (quoting Little Earth of the United Tribes, Inc. v. U.S. Dept. of Hous. & Urban Dev., 807 F.2d 1433, 1441 (8th Cir. 1986)) (stating that the law-of-the-case doctrine establishes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case") (citation omitted); see also Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 830 (8th Cir. 2008) (finding that the law-of-the-case doctrine applies to decisions made by appellate courts and final decisions made by district courts that have not been appealed) (citation omitted).  Neither is Equifax's motion inappropriate as to the issue of willfulness.  In its previous order, the Court found that there was a genuine issue of material fact as to willfulness.  (Mem. & Order at 16 [Doc. No. 92].)  At that time, the record had not been fully developed through discovery.  (See id. at 17.)  Now, however, this case is on the eve of trial and discovery is complete.  Because the evidence garnered to date is insufficient to support a claim of willful noncompliance with the FCRA, as discussed herein, Edeh's claims must fail in that regard.  Finally, the Court will not deny Equifax's motion for summary judgment solely on the basis that it did not schedule a hearing, file a notice of motion, or submit a proposed order.  No hearing was held on the present motions, and there is no dispute as to the relief Equifax seeks—dismissal of Edeh's case.

District granted summary judgment in favor of Equifax on Edeh's § 1681i claim regarding the presence of a credit freeze on his consumer file and his unsuccessful attempts to remove the freeze because, although the presence of the credit freeze may no longer have been desired, the notice of the freeze within Edeh's file was "technically accurate."  919 F. Supp. 2d 1006, 1013 (D. Minn. 2013).

The underlying dispute between Capital One and Edeh was the date the $1,700 check should have been credited to his account.  It is uncontroverted that on November 3, 2010, Edeh sent a letter and a check in the amount of $1,700 to Capital One, which was received by Capital One on November 5, 2010.  Further, there is no dispute that on November 24, 2010, Capital One cashed the $1,700 check and placed it in the "unclaims" account pending further information as to who sent the check.  And, it is uncontested that Capital One ultimately credited this payment to Edeh's account as of November 24, 2010.  Under 12 C.F.R. § 226.10, a creditor must credit a payment as of the date it is received, unless the consumer fails to follow the procedures set forth in the billing statement, thereby resulting in a requirement that the creditor apply the payment no less than five days after its receipt.  Under § 226.10(b), Capital One was required to credit the payment either as of November 5, 2010, or at the latest November 10, depending on whether Edeh followed any procedure set forth in the applicable billing statement.  See 12 C.F.R. § 226.10(a)-(b).  Under either scenario, crediting the payment as of the date the check was cashed, November 24, 2010, was incorrect.  Consequently, as of Edeh's November 25 and December 1 disputes to Equifax, and the resulting reinvestigation conducted by Equifax, Capital One had not yet credited the $1,700 payment to Edeh's

account, as Capital One did not know that the check was from Edeh at that time. Furthermore, Equifax's reporting that the Capital One balance was $1,713 on November 30, 2010, and was $1,715 on December 3, 2010, was inaccurate given Edeh's November payment of $1,700.

Equifax's argument that its reports of the balance on Edeh's Capital One account were "technically accurate" because Capital One had not yet cashed the $1,700 payment is of no avail. (Def.'s Supp. Mem. at 17 (citing Edeh II, 919 F. Supp. 2d at 1013).) Here, unlike the situation in Edeh II, the information supplied to Equifax came from a third party (Capital One) and was not solely based on Edeh's actions. Moreover, Equifax's "technically accurate" theory undermines the reasonable reinvestigation requirement mandated by § 1681i(a), as it is conceivable that any amount reported by a creditor is technically accurate until proven otherwise. Ultimately, the issue of Capital One not cashing the $1,700 payment prior to the November 25 and December 1 disputes goes to whether Equifax could have determined that the reporting on the account was in error, as opposed to the accuracy of the balance reported on Edeh's consumer file.

As to the reinvestigations conducted by Equifax regarding the December 21, 27 and 29, 2010, disputes (all of which occurred after Edeh had received the paid-in-full letter from Capital One), Equifax reported that Edeh owed $9 as of December 31, 2010. This resulting $9 balance took into account a November 23, 2010, interest charge of $19.40 by Capital One. (First Edeh Aff., Ex. E at 2.) Given that the $1,700 should have been credited no later than November 10, and perhaps as early as November 5, 2010, there is a dispute of fact as to whether the interest charge assessed for November was

correct, and ultimately whether the resulting $9 balance reported by Capital One and Equifax was accurate.[9]   In sum, Equifax's "technically accurate" argument fails.

### B.      Reasonableness of Equifax's Reinvestigation

Pursuant to § 1681i(a), a CRA conducts a reasonable reinvestigation by "'notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer.'"  Paul, 793 F. Supp. 2d at 1102 (quoting Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004) (citing 15 U.S.C. § 1681i(a)(1)(A)-(B)).  The duty to conduct a reasonable reinvestigation is not the same as the duty a furnisher of credit information has under 15 U.S.C. § 1681s-2(a)(8)(E).  Id. at 1103 (comparing 15 U.S.C. § 1681i(a) (CRA must conduct reinvestigation) with 15 U.S.C. § 1681s–2(a)(8)(E) (furnisher must conduct investigation)).  As the court in Paul v. Experian Information Solutions, Inc. stated:

> [T]he furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to "re investigate" . . . .

Id. (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156-57 (9th Cir. 2009)).  "[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher."  Gorman, 584 F.3d at 1156.

---

[9]      The Court notes that Equifax did not provide any evidence regarding the balance of the Capital One account on Edeh's credit report during the period surrounding Edeh's January 19, 2011, dispute.  Equifax's records reflect that Capital One updated Edeh's account information to reflect a zero balance sometime between January 21 and February 18, 2011.  (First Smith Decl. ¶ 82.)

However,

> in order to fulfill its obligation under § 1681i(a) "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." . . . "Whether the credit reporting agency has a duty to go beyond the original source will depend" on a number of factors. One of these is "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." A second factor is "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." Whatever considerations exist, it is for "the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i."

Cushman v. Trans Union Corp., 115 F.3d 220, 225-226 (3d Cir. 1997) (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir.1994)).  The decisive inquiry is whether the CRA could have determined that the reporting on an account was in error.  Id. at 226 (citation omitted); see also Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991) (stating that the determinative question for liability was "whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation").  "Thus, a section [1681i(a)] claim is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."  Cahlin, 936 F.2d at 1160.  Because each reinvestigation by Equifax in response to a dispute from Edeh is a new and distinct claim, the Court will proceed with analyzing the disputes at issue separately.

### 1.     November 25, 2010, Dispute

This Court concludes that no reasonable jury could find that Equifax failed to conduct a reasonable reinvestigation as it relates to Edeh's November 25, 2010, dispute. The only information provided to Equifax concerning this dispute was Edeh's letter to it claiming that Capital One had agreed to remove the account from his credit file.  (First Smith Decl. ¶ 70 & Ex. P.)  No other documentation was submitted with this letter, and the letter gave no details as to why Capital One had agreed to remove the account—i.e., the $1,700 check.  Through the ACDV process, which courts have found to be reasonable, Equifax communicated that Edeh was contesting the debt as inaccurate.  See Garrett v. Experian Info. Solutions, Inc., No. 11-12523, 2012 WL 1931324, *6 (E.D. Mich. May 29, 2012) (collecting cases) (stating that "many courts have held[] the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law").

While Edeh asserted in his opposition memorandum, without citing to any evidence, that he had spoken with a representative at Capital One who told him that the account information would be removed from his credit reports, this information was not included in the letter to Equifax.  (Pl.'s Opp. Mem. at 19-20.)  In any event, as stated previously, Capital One did not know that Edeh had sent in a payment at the time of the November 25, 2010, dispute, and an unsubstantiated assertion that an unidentified Capital One representative agreed to remove the account from his credit file would not have convinced Capital One otherwise.  Indeed, the evidence before this Court contradicts Edeh's unsupported argument.  On December 1, 2010, Capital One sent a letter to Edeh in response to a dispute as to the amount he owed, in which Capital One stated Edeh had

an outstanding balance of $1,714.17.  (First Edeh Aff., Ex. H.)  Thus, the Court finds that

Equifax is entitled to summary judgment as it relates to any FCRA claim arising out of its

duties under § 1681i(a) pertaining to Edeh's November 25, 2010, dispute.

### 2.    December 1, 2010, Dispute

The Court finds, as it did in the first round of summary judgment motions, that

there is a genuine dispute of material fact as to whether Equifax's reinvestigation of

Edeh's December 1, 2010, dispute was reasonable.  (See Mem. & Order at 11 [Doc. No.

92].)  As part of his December 1 dispute, Edeh represented that his account had been paid

in full and Capital One agreed to remove it from his credit reports.  In support, he

attached a copy of his November 3, 2010, letter to Capital One, including a check payable

to Capital One for $1,700, and a copy of the cancelled check in the amount of $1,700

made payable to Capital One.  (Second Edeh Aff., Ex. Q (EIS-EDEH-0109 to EIS-

EDEH-0110).)

Generally, there is no requirement under FCRA that a CRA furnish letters and

documents provided by a consumer to a creditor, so long as the ACDV accurately and

completely summarizes the nature of their contents.  See Paul, 793 F. Supp. 2d at 1103

(finding a summary by Experian that identified the alleged author of the letter and the

nature of its contents to be sufficient).  But here, the ACDV Equifax sent to Capital One

following Edeh's December 1 dispute letter only informed Capital One that Edeh

disputed his current balance.  (Second Edeh Aff., Ex. Q.)  Equifax did not provide Edeh's

November 3 letter to Capital One enclosing the check for $1,700, nor did Equifax notify

Capital One of the contents of that letter.  Equifax also did not notify Capital One of

Edeh's claim that he had paid off his account in full or provide Capital One with any information regarding Edeh's cancelled check.

Equifax's argument that its failure to mention the cancelled check in its ACDV was reasonable, as it had no reason to believe that Capital One did not have this information, is without merit.  A CRA's obligation under § 1681i(a) is to inform a furnisher of the disputed information of the substance of the dispute and provide it with all relevant information received from the consumer.  Paul, 793 F. Supp. 2d at 1102.  The fact that Equifax had no reason to believe that Capital One did not have this information has no bearing on whether it should have provided the information to Capital One.  In fact, it turns out that Equifax's belief was incorrect.  It was not until December 7, 2010, that Edeh notified Capital One that he had faxed it a copy of the cashed check.  (First Edeh Aff., Ex. P at 6.)  Moreover, it was not until December 15, 2010, that Capital One discovered that the $1,700 check cashed on November 24, 2010, was from Edeh.  (Id., Ex. K.)

Based on all of these facts, a reasonable jury could conclude that Equifax should have included in its ACDV form Edeh's statement that the account had been paid in full, along with information regarding Edeh's November 3, 2010, letter to Capital One and the cashed check, including the account number listed on the check and the date it was cashed.  Additionally, there is a dispute of fact as to whether Equifax considered, much less provided, all relevant information in its reinvestigation, because there is no mention of any of Edeh's supporting information on the ACDV form.  Therefore, the Court

concludes that there is a genuine dispute of material fact as to whether Equifax fulfilled

its duties under § 1681i(a) pertaining to Edeh's December 1, 2010, dispute.[10]

### 3.    December 21, 2010, Dispute

The Court finds that there is a genuine issue of material fact as to whether

Equifax's reinvestigation of Edeh's December 21, 2010, dispute was reasonable.  As part

of his December 21 dispute, Edeh sent to Equifax the cashed $1,700 check to Capital

One, Edeh's bank statement showing that the check had been cashed, and the December

21, 2010, letter from Capital One to Edeh confirming that the "balance on your Capital

One account is now paid in full" and that "[o]nce the payment clears, we'll notify the

following credit reporting agencies that your account has been paid in full."  (Second

Edeh Aff., Ex. R.)  The letter from Capital One also contained the name and telephone

number of the Recoveries Specialist, Loraine Bryan, who sent the letter from Capital

One.  (Id.)

As this Court previously found, while the December 22, 2010, ACDV summary

from Equifax to Capital One referenced both the check Edeh wrote to Capital One and

Edeh's Wells Fargo bank statement showing the payment, (Id., Exs. R, T (CAP ONE

011)), it did not make any mention of, much less describe, the contents of the letter from

---

[10]     As for Edeh's Motion for Summary Judgment, Edeh relied on Equifax's deemed
admissions to his First Amended Set of Requests for Admission in support of his
assertion that Equifax failed to independently review all relevant information and his
assertion that Equifax failed to provide Capital One with all relevant information.  (Pl.'s
Supp. Mem. at 17-31.)  However, this Court has allowed Equifax to withdraw these
admissions [Doc. No. 251].  Therefore, Edeh's Motion for Summary Judgment as it
relates to the reasonableness of Equifax's investigation as to all of the disputes at issue,
except for the January 19 dispute, is denied.

Loraine Bryan, Capital One's Recoveries Specialist, in which Capital One acknowledged receipt of the $1,700 payment and confirmed that Edeh's account had been paid in full. (See Mem. & Order at 11-12 (citing Second Edeh Aff., Ex. R) [Doc. No. 92].)  Although Equifax included some information regarding the cashed check in its ACDV form, by December 16, 2010, Capital One had already discovered Edeh's check and credited the payment to his account.  On December 23, 2010, Capital One responded that the account balance information should be updated to report a $9 balance, and Equifax updated Edeh's credit file accordingly.  (First Smith Decl. ¶ 77; First Edeh Aff., Ex. M at 1.)  The issue at this time was whether any balance remained as a consequence of accruing interest charges.  On the one hand, Capital One was reporting that Edeh had accrued interest in November leading to the remaining $9 balance.  However, at the same time, a representative of Capital One (Bryan) had confirmed in writing that Edeh's account had been paid in full.  Equifax failed to make any mention of the paid-in-full letter in the ACDV form or otherwise notify Capital One of its contents.  Only Equifax had knowledge of this discrepancy.  Therefore, a fact-finder could reasonably conclude that Equifax failed to provide Capital One with all of the relevant information that Equifax possessed regarding Edeh's account as it relates to the December 21 dispute.

In addition, Equifax's reliance on the fact that there was a legal dispute between Edeh and Capital One as to the date Edeh's $1,700 check should have been credited does not excuse Equifax of its responsibilities under the FCRA.  (See Mem. & Order at 13-14 (rejecting a similar argument by Equifax).)  To the contrary, this discrepancy only reinforces the fact that a jury could find that instead of relying solely on Capital One's

response to the ACDV, Equifax should have provided Capital One with a copy of

Bryan's letter (or at least summarized its contents) or given Bryan's name and contact

information to Capital One to address the apparent conflict with Capital One's

representation that a balance remained on Edeh's account.  See Bradshaw v. BAC Home

Loans Servicing, LP, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011) ("Many courts,

including this one, have concluded that where a CRA is affirmatively on notice that

information received from a creditor may be suspect, it is unreasonable as a matter of law

for the agency to simply verify the creditor's information through the ACDV process

without additional investigation.") (collecting cases).[11]

Finally, the Court finds that armed with the information provided by Edeh,

including the letter from Bryan, a jury could find that a reasonable reinvestigation by

Equifax should have included contacting Bryan to address the conflict presented by her

letter with Capital One's response to the ACDV.

---

[11]    Equifax's reliance on the Paul decision from this District does not afford it
summary judgment.  In that case, in a footnote, the court rejected the plaintiff's argument
that the CRA "violated § 1681i because it arbitrarily chose to rely on one of two pieces of
contradictory information from U.S. Bank.  Experian had no obligation under the FCRA
to accept Laliberte's letter on its face, and no reasonable jury could find that Experian
acted unreasonably by relying on information received directly from U.S. Bank rather
than a copy of a letter supplied by a consumer."  Paul, 793 F. Supp. 2d at 1104 n.8
(citation omitted).  The letter at issue in Paul was from a bank manager who stated that
any late payment reporting on the plaintiff's account was in error.  Id. at 1099.  However,
the court in Paul also found that "a CRA conducts a reasonable reinvestigation by
"notify[ing] the furnisher of the disputed information of the substance of the dispute and
provid[ing] it with all relevant information received from the consumer."  Id. at 1102.
The ACDV form generated by the CRA in Paul summarized the letter from the bank
manager.  Id. at 1100, 1103.  Here, the ACDV form in response to the December 21
dispute did not even mention the letter from Capital One's employee.

For all of these reasons, the Court concludes that there is a genuine dispute of material fact as to whether Equifax fulfilled its duties under § 1681i(a) pertaining to Edeh's December 21, 2010, dispute.

### 4.     December 27 and 29, 2010, Disputes

The Court finds that there is a genuine issue of material fact as to whether Equifax's reinvestigation of Edeh's December 27 and 29, 2010, disputes was reasonable. In his December 27 and 29 disputes to Equifax, Edeh communicated that Bryan, Capital One's Recoveries Specialist, had confirmed that his Capital One balance had been paid in full; attached a copy of this letter to the disputes; represented that Darik Brown, an Account Manager at Capital One, had also confirmed to him that the account had been paid and closed; and provided Equifax with the telephone numbers for Bryan and Brown. (First Smith Decl., Ex. V.)  In response to Edeh's inquiry, Equifax's December 29, 2010, ACDV informed Capital One that Edeh had provided a document from Loraine Bryan stating that Edeh's account had been paid in full on December 16, 2010.  (Second Edeh Aff., Exs. S, T (CAP ONE 005)).  This ACDV communication did not identify Bryan's position, provided no contact information for her, and made no mention of Edeh's conversation with Darik Brown.

Again, while Capital One was contending that a balance remained, this position was allegedly contradicted by not just Bryan, but by a Capital One account manager, as well.  Thus, a jury could determine that to meet its duties under §1681i(a) to include "all relevant information regarding the dispute," Equifax should have provided to Capital One a summary of the alleged conversation Edeh had with Brown, along with the contact

information for both Bryan and Brown. Moreover, given this conflicting information

from Capital One, a jury could reasonably determine that Equifax should have done more

to reinvestigate, including contacting Byran or Brown.[12] Therefore, the Court finds that

---

[12]    Equifax's assertion that the decision in <u>Schaffhausen v. Bank of America, N.A.</u>, 393 F. Supp. 2d 853 (D. Minn. 2005), mandates a finding that its reinvestigation was reasonable is rejected. In <u>Schaffhausen</u>, the plaintiff had a dispute with CRAs as to how his Bank of America ("BOA") account was being reported. The plaintiff had received letters from BOA stating that the account had been settled in full. <u>Id.</u> at 856-57. On a number of occasions, the plaintiff notified the CRAs that they had incorrectly reported his account as charged off, as opposed to being settled in full. <u>Id.</u> There is no indication that the plaintiff ever provided any of the letters he received from BOA to the CRAs. The only evidence presented to the CRAs was what the plaintiff claimed that BOA had communicated to him regarding the account, and what BOA communicated to the CRAs regarding the dispute. On these facts, with regard to the plaintiff's 15 U.S.C. § 1681i(a)(1) claim against the CRAs, the court concluded:

> There is no dispute that the CRAs contacted BOA in response to Schaffhausen's disputes, updated their reports, and notified Schaffhausen within the time frame allowed by the FCRA. In addition, the Court finds that there was nothing in the nature of Schaffhausen's disputes or the BOA's response to put the CRAs on notice that further investigation was necessary. For example, Schaffhausen was not asserting that the credit card was not his, . . . that he was a victim of identity theft, . . . or that his credit history had become mixed up with someone else's history . . . . Such circumstances may warrant further investigation on the part of the CRAs. <u>Instead, in this case, Schaffhausen was essentially notifying the CRAs that BOA told him it would report the account in a certain way and that the CRAs were not following suit.</u> In response, the CRAs went to the source to verify the information. BOA consistently verified the account as charged off and the CRAs updated their reports accordingly. The Court does not see any evidence that the CRAs' procedures were not reasonable as required by the FCRA. As such, the Court grants the CRAs' motions for summary judgment on Schaffhausen's claims that they violated the FCRA.

<u>Id.</u> at 857-58 (citations omitted) (emphasis added). Unlike the plaintiff in <u>Schaffhausen</u>, however, Edeh not only provided Equifax with the information the Capital One representatives communicated to him, but he also supplied Equifax with the contact information for these representatives and a paid-in-full letter from Capital One. A jury could conclude that this information warranted further investigation by Equifax.

there is a genuine dispute of material fact as to whether Equifax fulfilled its duties under

§ 1681i(a) pertaining to Edeh's December 27 and 29, 2010, disputes.

### 5.      January 19, 2011, Dispute

The Court finds that no reasonable jury could conclude that Equifax satisfied its

obligations under § 1681i(a) regarding Edeh's January 19, 2011, dispute.  In his January

19 dispute, Edeh asked that Equifax conduct a meaningful reinvestigation, which

included considering all materials provided by him.  (Third Edeh Aff., Ex. B; Fourth

Edeh Aff. ¶ 6 & Ex. F.)  Edeh included the December 22, 2010, letter from Bryan stating

that Capital One had received Edeh's $1,700 payment on December 16 and that the

account was paid in full, along with the January 19, 2011, letter from Capital One

thanking Edeh for the payment of $15.00 that it received on January 5, 2011, and stating

that the balance had been paid in full.  (Fourth Edeh Aff. ¶ 6 & Ex. F.)  Equifax contends

that the January 19 dispute cannot be considered because the Amended Complaint did not

identify his disputes by date and because Edeh's first motion for partial summary

judgment did not identify the January 19 dispute as being at issue.  (Def.'s Opp. Mem. at

9.)

Equifax's arguments fail.  First, in his Amended Complaint, Edeh alleges that

"inaccurate reporting related to Plaintiff's debt repayment history occurred during the

period between November 2010 and February 2011" in connection with Edeh's Capital

One account, he disputed the inaccurate information with Equifax "on multiple occasions

in or around November of 2010 and February of 2011," and Equifax "repeatedly failed to

perform reasonable investigations of the above disputes as required by the FCRA and

failed to remove the inaccurate information." (Second Am. Compl. ¶¶ 8, 17, 21 [Doc. No. 9].)  While the Amended Complaint does not specifically describe the January 19, 2011, dispute—in fact, it did not describe any of the disputes by date—it clearly encompasses any disputes through February 2011.

Second, the fact that Edeh did not raise the January 19 dispute in his initial motion for partial summary judgment does not preclude him from raising that dispute now, because it falls within the timeframe of alleged misconduct by Equifax in Edeh's Amended Complaint.  Therefore, Equifax cannot now claim to be surprised by Edeh's motion as to this dispute, and Equifax's failure to conduct discovery to determine the scope of Edeh's § 1681i(a) claim cannot preclude summary judgment on this issue given the extended discovery period in this case.  Accordingly, because Equifax provided no evidence that it responded to the January 19 dispute, this Court finds, as a matter of law, that Equifax did not meet its obligations under § 1681i(a).

In summary, this Court finds that no reasonable jury could conclude that Equifax failed to conduct a reasonable reinvestigation of Edeh's November 25, 2010, dispute. However, the Court finds that there is a genuine issue of material fact as to the reasonableness of Equifax's reinvestigation of the December 1, 21, 27 and 29, 2010, disputes; and the Court concludes as a matter of law that Equifax violated its duty to reinvestigate the January 19, 2011, dispute.

## C.   Damages

The FCRA creates a private right of action against a CRA for the negligent or willful violation of any duty imposed under the statute, including the duty to reinvestigate

under § 1681i(a).  See 15 U.S.C. § 1681n-o.  Section 1681o provides for actual damages and costs for negligent violations of the FCRA.  Section 1681n provides for actual damages or damages not less than $100 and not more than $1,000, punitive damages, and costs for willful violations of the FCRA.

### 1.  Negligent Noncompliance

In order to maintain a claim for negligent noncompliance under the FCRA, a plaintiff must show actual damages resulting from the CRA's reporting error.  Edeh II, 919 F. Supp. 2d at 1013 (citing 15 U.S.C. § 1681o(a)(1); Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir. 1979)).  A denial of credit or higher interest rates resulting from a CRA error on a credit report can constitute actual damages under the FCRA.  See Gorman, 584 F.3d at 1174.  Emotional distress damages can also constitute actual damages under the FCRA, however, such damages "must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'"  Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013) (quoting Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978)).  A consumer who is ultimately able to obtain credit may still be able to obtain emotional distress damages, and time spent trying to resolve a problem with a CRA may also be taken into account in assessing emotional damages.  See Cortez v. Trans Union, LLC, 617 F.3d 688, 719 (3d Cir. 2010) (citing Stevenson v. TRW Inc., 987 F.2d 288, 297 (5th Cir. 1993); Morris v. Credit Bureau of Cincinnati, Inc., 563 F. Supp. 962, 969 (S.D. Ohio 1983)).  However, a "brief episode of frustration and unhappiness" is insufficient.  Taylor, 710 F.3d at 829 (finding that a plaintiff's own testimony that she was upset and embarrassed, even when coupled with a

third party's testimony that the plaintiff cried, did "not establish the sort of concrete emotional distress that is required to constitute a genuine injury and actual damages"). The burden falls on a plaintiff to demonstrate that he "suffered damages as a result of the inaccurate information." Ruffin Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 608 (7th Cir. 2005).

In support of his claims of actual damages, Edeh submitted an affidavit in opposition to Equifax's motion for summary judgment.  In this affidavit, he stated that Equifax's failure to properly update his Capital One account to show that it had been paid and had a zero balance caused him "concern and frustration" because he was trying to obtain credit.  (Third Edeh Aff. ¶ 4.)  More particularly, Edeh claimed that he applied for credit at the Mayo Employee Credit Union on December 7, 2010, and that he was informed that the loan officer "could not complete [his] credit application because Equifax was reporting an unpaid balance on [his] Capital One account."  (Id. ¶ 5.)  The loan officer also told Edeh that he would keep the application open for 30 days in case Edeh could provide proof that the account had been paid.  (Id.)  According to Edeh, he "felt embarrassed thinking that the loan officer must have felt [he] was lying about paying off the account."  (Id. ¶ 6.)  Edeh returned to the Mayo Employee Credit Union on the same day with a copy of the check sent to Capital One along with a copy of the letter to Capital One, however, the loan officer told him that the documents were "insufficient proof," as the documents were all personal documents that could not be verified.  (Id. ¶¶ 6, 7.)  Edeh stated that he was "disappointed" by this, but knew that he could not do anything else to persuade the loan officer.  (Id. ¶ 7.)

On December 21, 2010, Edeh returned to the Mayo Employee Credit Union with his bank statement, which included an image of his cancelled check, but again the loan officer told him "that the bank statement was also insufficient proof" and that Edeh "should contact Equifax to change the account to reflect a zero balance" or that he "should get a letter on Capital One's letterhead confirming that the account was paid off." (Id. ¶ 8.)  Edeh maintains that this was a "low point" for him.  (Id. ¶ 9.)  Edeh did not go to work on this day; instead he spent the rest of the day trying to resolve the inaccurate information in his credit report, including obtaining the paid-in-full confirmation letter from Capital One.  (Id. ¶ 10.)  On December 22, 2010, Edeh went back to the Mayo Employee Credit Union and presented the paid-in-full letter from Capital One to the loan officer who "said it was sufficient proof and then approved [his] loan application."  (Id. ¶ 11.)

On December 27, 2010, Edeh applied for credit with Chase Bank USA, N.A., which denied his application on December 29, 2010.  (Id. ¶ 12 & Ex. A.)  The letter denying credit stated:

> Thank you for your interest in our MasterCard Platinum credit program. Your application was given thoughtful consideration by Chase Bank USA, N.A.
>
> After reviewing the information provided in your application and your credit bureau report, we regret that we are unable to approve your request for a credit account at this time.  The reason(s) for our decision are as follows:
>
> Delinquency or other derogatory relationship with our bank
>
> Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below.  The reporting

agency did not make the credit decision and is unable to provide you with
the specific reasons for our decision.

Equifax

(Id., Ex. A. (emphases added)).

Edeh asserts that he went back to the Mayo Employee Credit Union on January
18, 2011, and spoke with a loan officer about obtaining a new loan. (Id. ¶ 13.) He asked
the loan officer if he could use the credit report from the previous loan application in
order to avoid any surprises and embarrassment resulting from pulling a new report. (Id.)
The loan officer told him that the credit report from the last loan was more than a month
old, so the credit union needed to pull a new report. (Id.) The loan officer then pulled a
new report and told Edeh that Equifax was still reporting the Capital One account as
being unpaid. (Id.) The loan officer refused to use the previous confirmation letter from
Capital One and told him that he had to get a new confirmation letter showing the current
status of the account. (Id.) Edeh represented that he "was concerned" that the loan
officer thought he had forged the documents he had previously submitted and was being
untruthful. (Id. ¶ 14.) Edeh was also concerned that because both he and the loan officer
worked for the same employer (Mayo Clinic), the loan officer could submit a complaint
against him to his employer. (Id.) Edeh immediately went home to get a second
confirmation letter from Capital One. (Id.) That night, Edeh had trouble sleeping. (Id.)
He woke up every couple of hours to see if the confirmation letter was sent. (Id.)
Ultimately, he received the letter in the morning. (Id.) Edeh went back to the Mayo

Employee Credit Union that day with the letter, and his loan application was approved. (Id.)

Even though he was ultimately approved for the loans at the credit union, Edeh claims he went through trouble and delay to explain the inaccuracy and that he had "never felt so embarrassed trying to prove something [he] should not have to prove." (Id. ¶ 15.) He claims that the "entire process was frustrating, overwhelming and time consuming" and that he felt "helpless and restless" with his situation. (Id. ¶ 16.) At one point, Edeh contacted a credit counselor at the credit union to seek assistance in contacting Equifax, but she could not help him. (Id.) Edeh also attested that the credit issue caused him "great concern" because he was at that time planning to visit his family in West Africa and was planning on a traditional marriage, which required all of the money he could raise. (Id. ¶ 17.) Specifically, Edeh stated: "The inability to access credit from Chase due to the denied Chase credit application led to unsavory outcomes. I only want to tell that story once—to the jury." (Id.)

This Court finds that Edeh has failed to show that he suffered actual damages arising out of his loan applications due to Equifax's conduct. The basis for asserting that he was initially denied the loans due to Equifax's reporting on the unpaid Capital One balance are out-of-court statements by an unnamed Mayo Credit Union loan officer who allegedly told Edeh that his credit application could not be approved because of Equifax's report of the unpaid balance on his Capital One account. Edeh provided no documents or testimony from the credit union or the loan officer to support this assertion. Edeh cannot rely on hearsay in order to avoid summary judgment. Mason, 559 F.3d at 885; see also

Tilley v. Global Payments, Inc., 603 F. Supp. 2d 1314, 1326 (D. Kan. 2009) ("Of course, hearsay testimony may not be considered in ruling on a motion for summary judgment. The court will therefore not consider plaintiff's deposition testimony regarding what a credit card representative told her about the interest rate increase.").

As for Chase Bank's denial of his credit card application, Edeh's focus on the language of the denial letter stating that the "credit decision was based in whole or in part on information obtained in a report" from Equifax, ignores Chase Bank's stated reason for the denial of credit—the "[d]elinquency or other derogatory relationship with our bank."  Chase Bank is not Capital One.  In other words, this Court cannot conclude that Chase Bank's denial of credit was caused by the reporting of the Capital One balance by Equifax.

The Court also finds that any claim for emotional distress does not survive summary judgment.  While an emotional distress injury may be established solely by a plaintiff's own testimony, the evidence presented by Edeh does not establish the type of concrete emotional distress that is required to create a genuine injury and actual damages and survive summary judgment under Eighth Circuit law.  Edeh has made conclusory claims of "concern and frustration," "disappointment," and "embarrassment" relating to being denied credit; experiencing a "low point" when he was not able to obtain credit; concern for his job; one night's restless sleep; "concern" related to his attempts to amass money to travel to West Africa and pay for his wedding; and an unspecified "unsavory outcome" related to being denied the Chase Bank credit card.  There is no evidence that Edeh suffered any physical injury related to his emotional distress or that he was treated

for his emotional distress. Therefore, this Court finds that Edeh's evidence of the impact of Equifax's conduct does not establish concrete emotional distress sufficient to constitute a genuine injury and actual damages.

Consequently, while the Court has found that there is a genuine issue of fact as to the reasonableness of Equifax's reinvestigations of the December 1, 21, 27 and 29, 2010, disputes, and has concluded that Equifax violated its duty to reinvestigate the January 19, 2011, dispute as a matter of law, any claim under FCRA for negligent noncompliance of § 1681i(a) fails because Edeh has not presented evidence to establish the requisite actual damages. As such, Equifax's motion for summary judgment is granted as to all of Edeh's FCRA claims of negligent noncompliance.

### 2.   Willful Noncompliance

Pursuant to the plain language of the FCRA, a claim for "willful noncompliance" does not require proof of actual damages. See 15 U.S.C. § 1681n(a)(1)-(2); Graham v. CSC Credit Servs., Inc., 306 F. Supp. 2d 873, 879 (D. Minn. 2004) ("In the absence of actual damages, a consumer can still recover punitive and statutory damages under section 1681n, if he can show that the defendant 'willfully fail[ed] to comply' with the FCRA."). Willful noncompliance with the FCRA requires at least a showing of "reckless disregard," which is lower than a "knowing violation" but higher than the "negligence" standard pertaining to actual damages. Safeco Ins. Co. of Am. v. Burr et al., 551 U.S. 47, 57-59 (2007); see also Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (citing 15 U.S.C. § 1681n) ("FCRA provides for a private right of action if a creditor willingly, knowingly, or recklessly violated its provisions.").

"'To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.'" Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998) (citations omitted); see Safeco, 551 U.S. at 68 (stating that conduct evidencing a reckless disregard includes actions that involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known"). Thus, "punitive damages have been allowed [where] the defendant's conduct involved willful misrepresentations or concealments." Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986). For example, in Millstone v. O'Hanlon Reports, Inc., the Eighth Circuit Court of Appeals affirmed an award of punitive damages where the defendant "trampl[ed] recklessly" on the plaintiff's rights under the FCRA by including "innuendo, misstatement, and slander" in the plaintiff's credit report, failing to disclose all of the contents of the report to the plaintiff, and refusing to furnish a copy of the report to the plaintiff. 528 F.2d 829, 834-35 (8th Cir. 1976). Therefore, "to survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating 'conscious disregard' or 'deliberate and purposeful' actions necessary to make out a claim for willful noncompliance under the FCRA." Spector v. Experian Info. Servs. Inc., 321 F. Supp. 2d 348, 357 (D. Conn. 2004) (quoting Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 476 (2d Cir. 1995)).

a.      December 1, 2010, Dispute

As for the December 1, 2010, dispute, Equifax failed to communicate information to Capital One regarding the cashed check provided by Edeh and the letter from Edeh to

44

Capital One enclosing the check.  Equifax claims it did not provide this information

because it had no reason to believe that Capital One did not already possess this

information.  While the failure to mention the evidence supplied by Edeh is not a minor

error, Edeh has presented no evidence to support his claim that it was a willful error.

Rather, the evidence demonstrates that it was not a willful error.  Equifax promptly sent

an ACDV summary to Capital One, noting that Edeh disputed the balance and asking for

verification.  On the same day that Equifax received a response from Capital One,

Equifax sent the results of the reinvestigation to Edeh.  In light of Equifax's other actions,

its failure to describe the letter and the cashed check in the ACDV is insufficient to

establish a reckless disregard of Edeh's rights under the FCRA.  Accordingly, the Court

finds that there is no genuine dispute of material fact as to the willfulness of Equifax's

actions relating to the December 1 dispute.

> b.  December 21, 2010, Dispute

As stated previously in regard to the December 21 dispute, Equifax failed to

inform Capital One of the paid-in-full letter from Bryan, failed to provide Capital One

with Bryan's contact information included in the paid-in-full letter, and failed to contact

Bryan.  However, Equifax did describe the bank statement and cancelled check in the

ACDV form.  Therefore, it appears that Equifax made an attempt to summarize the

relevant information.  And, again, Equifax promptly sent the ACDV summary to Capital

One and immediately conveyed the results of the reinvestigation to Edeh upon receipt.

On these facts, a reasonable jury could conclude that Equifax acted—at most—

negligently.  Therefore, the Court finds that there is no genuine dispute of material fact regarding the willfulness of Equifax's actions pertaining to the December 21 dispute.

### c.      December 27 and 29, 2010, Disputes

As for the December 27 and 29, 2010, disputes, the corresponding ACDV communication from Equifax to Capital One did not identify any information regarding Bryan's affiliation with Capital One, made no mention of Edeh's conversation with Brown at Capital One, and provided no contact information for Bryan or Brown.  The ACDV form did, however, refer to the communication from Bryan (including her name, the date, and the assertion that the account was paid in full).  And, Equifax promptly sent this ACDV summary to Capital One upon receiving Edeh's dispute, and it promptly conveyed the results to Edeh upon receiving Capital One's response.  Again, a reasonable jury could conclude that Equifax acted—at most—negligently.  For these reasons, the Court finds that there is no genuine dispute of material fact regarding the willfulness of Equifax's actions as it relates to the December 27 and 29 disputes.

### d.      January 19, 2011, Dispute

Finally, while the record shows that Equifax apparently failed to respond to Edeh's January 19, 2011, dispute, Edeh has put forth no evidence of any affirmative, intentional act on Equifax's behalf.  In the absence of such evidence, no reasonable jury could conclude that this failure by Equifax was willful.  As such, the Court finds that there is no genuine dispute of material fact regarding the willfulness of Equifax's handling of the January 19 dispute.

This Court has performed a separate analysis of each of Edeh's disputes to determine whether there is a genuine dispute of material fact as to the willfulness of Equifax's conduct.  While, as discussed above, the Court has determined that a reasonable jury could conclude that Equifax acted negligently in conducting its reinvestigations, the Court finds that Edeh has set forth no affirmative evidence of willfulness on Equifax's behalf.[13]  For these reasons, the Court finds that Edeh's claims against Equifax for willful violations of 15 U.S.C. § 1681i(a) fail as a matter of law.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant Equifax Information Services LLC's Motion for Summary Judgment [Doc. No. 175] is **GRANTED**; and

2.  Plaintiff Samuel N. Edeh's Motion for Summary Judgment [Doc. No. 192] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 24, 2013              s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Court Judge

---

[13]     In addition, to the extent Edeh relied on the requests for admissions that were previously deemed admitted in support of his claims of willful noncompliance, that evidence is insufficient to support those claims because the Court allowed Equifax to withdraw those admissions.  (See Mem. & Order [Doc. No. 251].)